ON APPLICATION FOR REHEARING
The unpublished memorandum of November 3, 1995, is withdrawn and the following opinion is substituted therefor.
Julia McCain Lampkin Asam appeals from an order of the Alabama State Bar in a disciplinary proceeding that resulted in her disbarment. We affirm.
Based on grievances filed against Asam, the Alabama State Bar filed five formal complaints against Asam; those complaints contained 28 charges. Following a hearing before the Disciplinary Board of the Alabama State Bar ("the Board"), the Board found Asam guilty of 17 of the 28 charges against her, and, on each of the five complaints, the Board ordered Asam disbarred. The Board also imposed the following additional penalties:
 "(a) The respondent lawyer will pay all sanctions imposed as attorney's fees by any court, federal or state, resulting from the following civil actions: Williams v. Capps Trailer Sales; Asam v. Judge Bernard Harwood; and Asam v. Vreeland and 20 Defendants (as last amended); and
 "(b) . . . [P]rior to filing a petition for reinstatement pursuant to Rule 28 of the Rules of Disciplinary Procedure, the respondent lawyer will:
 "(1) Retake and pass the Alabama State Bar Examination and the professional responsibility examination; and
 "(2) . . . [S]ubmit to an examination by a qualified medical expert, as the Disciplinary Board shall designate, to inquire into and report to the Disciplinary Board the mental compentency of the respondent. The medical expert shall report his or her findings to the Disciplinary Board. The respondent shall bear the cost of the examination."
For clarity's sake, each complaint is discussed separately.
 Complaint One — ASB 92-254
Complaint One involved a civil action filed by Asam on behalf of Jessie Edward Williams. Williams was injured on the job in 1973 and, represented by counsel (not Asam), settled a personal injury claim and a workers' compensation case in 1974. Sixteen years later, Williams attempted to reopen his case with "newly discovered evidence"; however, this Court, holding that the "newly discovered" evidence had been generated during the discovery period of Williams's original lawsuit, affirmed the trial court's dismissal of Williams's complaint. SeeWilliams v. Capps Trailer Sales, Inc., 589 So.2d 159
(Ala. 1991).
Thereafter, Asam filed an action "for Mr. Williams" in a circuit court seeking $5 million in damages, again claiming to have "newly discovered evidence." She sued all of the original defendants, as well as two insurance companies that had not insured any of the parties. The trial court dismissed the complaint and imposed sanctions against Asam. The Court of Civil Appeals affirmed and imposed additional sanctions against Asam. See Williams v. Capps Trailer Sales, Inc., 607 So.2d 1272
(Ala.Civ.App. 1992). This Court denied certiorari review. Asam's separate appeal from the award of additional sanctions was resolved against her in Asam v. Capps Trailer Sales, Inc.,631 So.2d 251 (Ala.Civ.App. 1993). This Court again denied certiorari review.
Asam then filed an identical action on behalf of Williams in a federal district court — again claiming "newly discovered evidence," but adding the State of Alabama as a defendant. The district court dismissed the complaint; the Court of Appeals for the Eleventh Circuit affirmed the dismissal; and the Eleventh Circuit imposed sanctions against Asam. Over $32,000 in sanctions were imposed against Asam in those two cases.
Complaint One contained nine charges against Asam: Charge I — violation of DR 1-102(A)(5)[1]; Charge II — violation of Rule of *Page 869 
Professional Conduct 8.4(d)[2]; Charge III — violation of DR 7-102(A)(2)[3]; Charge IV — violation of DR 7-102(A)(5)[4]; Charge V — violation of Rule of Professional Conduct 1.1 [5]; Charge VI — violation of Rule of Professional Conduct 3.1(a)[6]; Charge VII — violation of Rule of Professional Conduct 3.3(a)(1)[7]; Charge VIII — violation of Disciplinary Rule 1-102(A)(6)[8]; and Charge IX — violation of Rule of Professional Conduct 8.4(g).[9]
Asam was found guilty of Charges II, III, V, and VI, and not guilty of the remaining charges of Complaint One.
 Complaint Two — ASB 94-177
Complaint Two resulted from grievances filed with the State Bar regarding a lawsuit Asam had filed against Circuit Judge Bernard Harwood. According to Asam's complaint, Harwood, the incumbent judge and Asam's opponent in the 1992 race for judge of the Tuscaloosa County Circuit Court, made libelous remarks about Asam during his campaign. During the discovery phase of that lawsuit, Asam's conduct included avoiding notice and service, and not cooperating with regard to deposition scheduling.
The circuit court granted Harwood's motion for summary judgment. Asam filed a post-judgment motion to alter, amend, or vacate the judgment, alleging that the trial court's order contained false statements and that the trial judge had failed to read pleadings in the case. Asam's post-judgment motion was denied. This Court affirmed the summary judgment, without opinion. Asam filed an identical action against Harwood in a federal district court. The district court dismissed the complaint on res judicata grounds, and the Court of Appeals for the Eleventh Circuit affirmed the dismissal.
Complaint Two, ASB 94-177, contained five charges against Asam: Charge I — violation of Rule of Professional Conduct 8.4(d)[10]; Charge II — violation of Rule of Professional Conduct 1.1[11]; Charge III — violation of Rule of Professional Conduct 3.1(a)[12]; Charge IV — violation of Rule of Professional Conduct 3.3(a)(1)[13]; and Charge V — violation of Rule of Professional Conduct 8.4(g)[14].
The Board found Asam guilty of Charges I, III, and V, and not guilty of the remaining charges.
 Complaint Three — ASB 93-476, ASB 93-378, ASB 93-379, and ASB 93-488
Complaint Three also arose from Asam's 1992 campaign for circuit judge. Tuscaloosa lawyer Al Vreeland wrote to the lawyers of the 6th Judicial Circuit an "open letter" in which he asked the lawyers to support Judge Harwood and in which he expressed the opinion *Page 870 
that Asam was "completely and hopelessly unqualified." Asam sued Vreeland; the trial court granted Vreeland's motion for summary judgment. Vreeland moved for sanctions, and, in a hearing to determine reasonable attorney fees, the trial court heard testimony from several local lawyers. Thereafter, Asam added as defendants those lawyers who had testified and Vreeland's secretary,[15] alleging a "conspiracy" against her.
The trial court dismissed Asam's complaint; made findings of fact and conclusions of law regarding Asam's conduct in that action; awarded monetary reimbursement from Asam to Vreeland and one of the co-defendants; and ordered the circuit court clerk to send a copy of the orders in the case to the State Bar Disciplinary Commission. Asam filed three appeals from the orders in that case; as to each appeal this Court affirmed.
Asam filed an identical action in a federal district court against all the co-defendants she had sued in the state court action, seeking $10 million in damages. The district court dismissed the complaint and the Court of Appeals for the Eleventh Circuit affirmed the dismissal.
Based on the allegations Asam had made in her pro se lawsuits against Vreeland and his co-defendants, her conduct during the pendency of those actions, and the result in those actions, the Bar filed five charges against Asam in Complaint Three (ASB 93-476, -378, -379, and -488): Charge I — violation of Rule of Professional Conduct 8.4(d)[16]; Charge II — violation of Rule of Professional Conduct 1.1[17]; Charge III — violation of Rule of Professional Conduct 3.1(a)[18]; Charge IV — violation of Rule of Professional Conduct 3.3(a)(1)[19]; and Charge V — violation of Rule of Professional Conduct 8.4(g).[20]
Asam was found guilty of Charges I, III, and V, and not guilty of the remaining charges in Complaint Three.
 Complaint Four — ASB 94-176
Complaint Four involved Asam's filing a medical malpractice action on behalf of Ms. Mary H. Stokes. After Stokes had developed a post-operative infection in mid-1989, she consulted a lawyer in Selma about a possible medical malpractice claim. After 10 months, the Selma lawyer returned Ms. Stokes's file to her. Stokes consulted another lawyer in Selma, who referred her to a lawyer in Birmingham. The Birmingham lawyer informed Stokes of the difficulty of proving medical malpracticewithout the testimony of a medical expert and refused to take her case.
A friend of Stokes recommended that she see Asam. Asam agreed to represent Stokes for a fee of $1,000; however, Stokes signed a 50% contingent fee employment contract with Asam. That contract also contained the notation "$1,000 research in medical and legal non-refundable money to file lawsuit."
Asam filed a medical malpractice action for Stokes, but filed no documents with the court except Stokes's medical records. The circuit court twice warned Asam that the defendants' motion for summary judgment would be granted unless Asam could provide expert medical testimony. Asam then tried to qualify herself as a medical expert in the case and filed an affidavit in which she purported to be a medical expert. However, Asam's affidavit did not refute the affidavit of the defendant doctor. The trial court also pointed out that the articles authored by Asam and offered as proof of her expertise were over 30 years old and that Asam's claimed expertise was in a field not related to the defendants' specialty of obstetrics surgery.
The trial court granted the defendants' motion for summary judgment; it later denied Asam's post-judgment motion to alter, amend, or vacate the summary judgment. Asam billed Stokes for a total of $4,168. On appeal, this Court affirmed the summary *Page 871 
judgment without opinion. 622 So.2d 939 (Ala. 1993) (table). Then, without Stokes's knowledge, Asam appealed this Court's decision to the United States Supreme Court. That Court denied certiorari review. Stokes v. Hatch, ___ U.S. ___,114 S.Ct. 1063, 127 L.Ed.2d 383 (1994).
Complaint Four (ASB 94-176) contained five charges against Asam: Charge I — violation of Rule of Professional Conduct 8.4(d)[21]; Charge II — violation of Rule of Professional Conduct 1.1[22]; Charge III — violation of Rule of Professional Conduct 3.1(a)[23]; Charge IV — violation of Rule of Professional Conduct 3.3(a)(1)[24]; and Charge V — violation of Rule of Professional Conduct 8.4(g).[25]
The Board found Asam guilty of Charges I, II, III, and IV, and not guilty of Charge V.
 Complaint Five — ASB 94-175
Complaint Five resulted from Asam's filing two wrongful death actions[26] on behalf of Johnny H. Waters and Joseph Hugh Waters, based on the death of the plaintiffs' wife and mother, respectively. The defendants moved to dismiss, alleging that the complaints were null and void 1) because a wrongful death action must be brought by the deceased's personal representative acting in that capacity, and 2) because the applicable statutory limitations period had expired. The circuit court granted the motions to dismiss, and this Court affirmed the dismissals. Waters v. University of AlabamaHospitals, 591 So.2d 450 (Ala. 1991).[27] Asam filed an action in a federal district court, making identical claims. The complaint was dismissed. The Court of Appeals for the Eleventh Circuit affirmed the dismissal.
Complaint Five (ASB 94-175) stated four charges against Asam based on her actions in regard to those state and federal lawsuits: Charge I — violation of Rule of Professional Conduct 8.4(d)[28]; Charge II — violation of Rule of Professional Conduct 1.1[29]; Charge III — violation of Rule of Professional Conduct 3.1(a)[30]; and Charge IV — violation of Rule of Professional Conduct 8.4(g)[31].
The Board found Asam guilty of Charges I, II, and III, and not guilty of Charge IV.
In her brief to this Court, Asam states multiple issues involving numerous allegations of error on the part of the Disciplinary Board. Asam has also filed with this Court a motion to supplement the record on appeal with documents that she says this Court must order the Disciplinary Board to produce. Because our disposition of the issues on appeal relates directly to the merits of Asam's motion to supplement the record, we will include our consideration of her motion as part of our analysis and disposition of the merits of the appeal.
 I.
Asam contends that she was denied due process of law because, she says, she was not properly served with notice of the disciplinary proceedings. The evidence is to the contrary. *Page 872 
The required procedure for investigating alleged misconduct by a member of the Alabama State Bar and for conducting a hearing based on the investigation is set out in the Alabama Rules of Disciplinary Procedure.
Rule 12(a), Ala.R.Disc.P., requires that the general counsel of the Alabama State Bar investigate complaints of alleged lawyer misconduct and report to the Alabama State Bar's Disciplinary Commission the results of the investigation and the general counsel's decision as to whether formal charges should be filed against the lawyer. In Asam's case, following his report to the Disciplinary Commission, and pursuant to Rule 12(e), Ala.R.Disc.P., the general counsel filed the five complaints with the secretary of the Alabama State Bar.
Also pursuant to Rule 12(e), the secretary of the State Bar signed the five complaints against Asam and five related summonses on June 23, 1994. The five summonses and complaints were received by the Tuscaloosa County Sheriff's Department on June 24, 1994, and were served on June 26, 1994.
Rule 12(e)(1), Ala.R.Disc.P., gives the respondent lawyer 28 days after service of the complaints to file an answer with the general counsel and the Disciplinary Board. Rule 12(e)(1) goes on to provide:
 "If the respondent fails to answer, the charges shall be deemed admitted; provided, however, that if such failure to file was attributable to mistake, inadvertence, surprise, or excusable neglect, a respondent who fails to answer within the time provided may obtain permission of the Chairman to file an answer."
The record reveals that Asam did not file an answer during the 28-day period following June 26, 1994, and did not request permission of the chairman to file an out-of-time answer. Asam does not contend that an answer or response was filed in regard to any of the five complaints.
Pursuant to Rule 12(e)(3), Ala.R.Disc.P., and Rule 5, Ala.R.Civ.P., the first notices of the formal hearing on the five complaints, set for February 23, 1995, were mailed by the Bar to Asam at her home address and at her office address — both by regular first class mail and by certified mail — on January 20, 1995. The regular mail was not returned; however, the certified mail was returned from both addresses, on February 8 and February 24, as "unclaimed." On February 7, notice was sent by Airborne Express; it was delivered to Asam's residence on February 8, 1995. Additionally, the State Bar hired a process server who, after several attempts, personally served the notice on Asam's husband at their home on February 8, 1995.
The record makes it clear that, despite her assertions to the contrary, Asam had sufficient notice of the disciplinary hearing involving the complaints against her, and the record makes it clear that her conduct showed a pattern of avoiding service of process. See Board of Commissioners of the AlabamaState Bar v. Tarver, 293 Ala. 343, 302 So.2d 856 (1974) (and the authorities cited therein).
 II.
Asam next argues that her right to due process was violated because, she says, she was not notified that the disciplinary hearing would also be a "surprise sanity hearing." We find no merit in this argument.
Asam's contention that she was subjected to a "sanity hearing" at the February 23, 1995, disciplinary hearing is based, in part, on the discussion that occurred when she attempted to obtain a continuance of the hearing. As one of the grounds for her motion for a continuance, Asam stated that she had been physically disabled by an automobile accident in 1994 and that, as a result, she was in pain, was involved in rehabilitation therapy, and had had to stop the active practice of law at her office.
Based on these assertions, the Board gave Asam the option of postponing the hearing if she chose to be placed on "physical disability status." The Board included in this option the offer to appoint a lawyer to manage Asam's cases and serve her clients during her term of "disability." Asam refused. The record is totally devoid of any mention of Asam's mental competence during the discussion of her motion to postpone the hearing. *Page 873 
Asam also claims that her due process rights were violated by what she calls the "sanity hearing" that she says gave rise to that portion of the Board's disbarment order requiring that, "[p]rior to filing a petition for reinstatement," Asam must be examined by a qualified medical expert, who is "to inquire into and report to the Disciplinary Board the mental competence of the respondent."
We have read the transcript of the disciplinary proceedings and the various documents that gave rise to the five complaints against Asam. The record makes it clear that, while the disciplinary proceeding was not a "surprise sanity hearing," the Board acted properly in adding to its order of disbarment the requirement concerning Asam's mental competence. Further, the Board's order fully complies with Rule 8, Ala.R.Disc.P., which allows sanctions and remedies "consistent with the purposes of lawyer discipline," in addition to the specific sanctions set out in that rule.
 III.
The third error alleged by Asam is that the Bar wrongfully failed to produce certain documents relating to the charges against her. The documents to which Asam refers are 1) the "original grievances" filed against her with the State Bar; and 2) the entire file in ASB 94-177. Asam claims that, without these documents, she was obliged to proceed in the disciplinary hearing not knowing what the charges were against her. This argument has no merit.
On June 28, 1994, Asam personally appeared in the office of the general counsel in Montgomery to demand copies of the grievances filed against her (Asam had been served with the five summonses and complaints on June 26). In a written response to this demand, General Counsel Robert W. Norris informed Asam that the five complaints with which she had been served contained the essence of every grievance. In this same written response, Norris suggested that Asam focus her attention on the serious charges contained in the five complaints and that Asam take steps to obtain a lawyer to represent her during the disciplinary proceedings.
Asam made no further attempt to discover documents or other evidence in this proceeding. However, on July 8, 1994, Asam sued the general counsel and others in a federal district court, alleging that they had violated her right to have copies of the original grievances. The district court granted the defendants' motion for summary judgment, and then denied Asam's motion to alter, amend, or vacate its judgment, holding:
 "This is one of those 'kitchen-sink' cases in which [Asam] has included almost every claim conceivable and sued almost everyone within reach. Because it appeared from the outset that many, if not all, of Asam's claims might be meritless, the court immediately enjoined discovery so as not to subject the defendants to unnecessary, costly, and harassing litigation."
Asam v. Alabama State Bar, [Ms. 94-T-859-N, March 1, 1995] (M.D.Ala. 1995).
As the State Bar points out, Asam erroneously attempted to use the order of the federal district court enjoining further discovery in the federal case as her excuse for conducting no discovery in the disciplinary proceedings pending against her before the Disciplinary Board of the Alabama State Bar. However, despite Asam's total failure to avail herself of the proper means of discovery, as provided by the Alabama Rules of Civil Procedure, at the hearing on February 23, the chairman of the Disciplinary Board made the following ruling during the discussion of Asam's motion for a continuance:
 "THE CHAIRMAN: Let me say this. We will put this one to bed right now. You have been advised by this Board on more than one occasion already this morning that you failed to follow the proper procedure to obtain the grievances. . . . [H]owever, notwithstanding your failure to comply with the Rules of Civil Procedure, I am going to order Gen. Norris to provide the investigative files, unless he has an objection based on confidentiality and privilege, to produce any and all investigative files [he has] on Mrs. Asam within 24 hours. *Page 874 
"GEN. NORRIS: Yes. We can do that, Madam Chairman.
". . . .
 "THE CHAIRMAN: Mrs. Asam, I have not made afinding that you are entitled to [the documents] before we start the hearing, because you failed to properly request them. I am making a finding that you are going to get them now for whatever purpose they will serve you. You have no special entitlement to those records without a proper request — period.
". . . .
 "THE CHAIRMAN: It is this Board's decision that Mrs. Asam has absolutely, totally failed to comply with the minimum with reference to the Rules of Civil Procedure to obtain her documents. And I agree with [Gen. Norris] that they are irrelevant to this proceeding."
There is no evidence to support Asam's argument that she was forced to proceed with the disciplinary hearing without full knowledge of the charges against her. Further, quoting with approval In re Sullivan, 283 Ala. 514, 219 So.2d 346 (1969), this Court held in Board of Comm'rs of the Alabama State Bar v.Tarver, 293 Ala. 343, 302 So.2d 856 (1974):
 " ' "An attorney must be accorded due process in disbarment and disciplinary proceedings, and the requirements of due process are met when the attorney is served with charges or specifications reasonably informing him of the charges against him and the attorney is thereafter accorded a hearing with an opportunity to defend." ' "
293 Ala. at 346-47, 302 So.2d at 858-59 (quoting earlier cases).
It is clear that Asam was served with complaints framed to specify the charges against her and that she was given a hearing with the opportunity to defend. We find no violation of Asam's right to due process with regard to the documents she claims were withheld from her.
 IV.
Asam's fourth contention of error is that the failure of Chairman Devereaux and General Counsel Robert Norris to recuse in Asam's disciplinary hearing created a conflict of interest and, therefore, violated Asam's right to due process. We disagree.
Asam bases her "conflict of interest" argument on the claim that her pro se lawsuits against Ms. Devereaux were pending in a state circuit court and that her lawsuits against Gen. Norris were pending in a federal district court during the pendency of her disciplinary proceedings — despite the fact that judgments in favor of the defendants and against Asam had been entered inboth cases.
The standard for determining whether a lawyer should decline to represent a defendant in a criminal action is whether there was an actual, rather than a possible, conflict of interest and
whether the conflict would adversely affect the performance of the lawyer in representing the client. See Cuyler v. Sullivan,446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).
This is not an appeal from a criminal proceeding; however, we conclude that, in order to show that in this disciplinary hearing Ms. Devereaux and Gen. Norris should have recused, Asam must prove that there was an actual conflict of interest on the part of Ms. Devereaux and Gen. Norris and that that conflict adversely affected their impartiality or their performance. Asam has produced no proof of a conflict of interest, nor has she shown any misconduct on the part of Ms. Devereaux or Gen. Norris. Ms. Devereaux and Gen. Norris correctly refused to recuse.
 V.
Asam's fifth contention of error is that her right to free speech was violated because, she contends, she was disciplined in connection with lawsuits she had filed in two "political" cases — the lawsuits arising from Asam's campaign for a judicial office. There is no merit to this argument.
In complaints ASB 94-177, 93-476, 93-488, 93-378 and 93-379, Asam was found guilty of the charges of engaging in conduct prejudicial to the administration of justice; engaging in conduct that adversely reflected on her fitness to practice law; and filing a lawsuit to *Page 875 
"harass or maliciously injure another." While the right of free speech protects political statements made in the context of campaign rhetoric, it does not provide a shelter for a lawyer's abuse of the judicial system as a tool for harassment when his or her political aspirations are thwarted. The disciplinary hearing and the resulting discipline did not violate Asam's right to free speech.
 VI.
Asam's sixth contention of error charges that Gen. Norris, acting as general counsel for the State Bar, violated Rule 30, Ala.R.Disc.P., when, following Asam's disciplinary hearing, he provided information regarding Asam's disbarment to a newspaper, The Tuscaloosa News.
Before January 1, 1995, Rule 30(a), Ala.R.Disc.P., required that a decision by the Disciplinary Board to impose public discipline upon a lawyer remain confidential until the time for appealing the Board's decision had expired or until the lawyer's appeal had been finally decided by this Court. However, by an order dated October 14, 1994, with an effective date of January 1, 1995, this Court amended Rule 30, so that at the time of Asam's disciplinary hearing, Rule 30(a) provided:
"(a) Proceedings That Are Confidential
 "Except as provided by section (b) [regarding "Proceedings That Are Not Confidential"], all disciplinary proceedings of the Alabama State Bar shall remain confidential until:
"(1) The respondent pleads guilty . . .; or
 "(2) The Disciplinary Board or Disciplinary Commission makes a finding of guilty.
 "The Disciplinary Commission may, however, by majority vote, give any disciplinary proceeding, or any part thereof, the continuing status of confidentiality. . . . Continued confidentiality of a proceeding shall be invoked only in those cases where the particular timing or other circumstances are such that the revelation of the matter would, in all probability, confer an unwarranted benefit on another party, or cause to the respondent or to another a detriment far greater than is warranted by the seriousness of the complaint."
Given the seriousness of the charges contained in the complaints against Asam, we find no compelling reason for the Disciplinary Board to order "continued confidentiality" of the proceedings involving Asam. We hold, therefore, that Gen. Norris did not violate Rule 30, Ala.R.Disc.P., when he informedThe Tuscaloosa News of Asam's disbarment.
 VII.
Asam contends that Chairman Devereaux committed reversible error when she refused to permit Asam to call General Counsel Norris as a witness to testify to what Asam alleged was a conspiracy by Gen. Norris and others to fraudulently divest Asam of her right to practice law. Asam had not submitted Gen. Norris's name to the Board as a prospective witness and, when asked at the hearing, she submitted no proof to support her allegation that Gen. Norris was a "necessary" witness. Ms. Devereaux acted within her discretion in denying Asam's request. We find no error in this regard. See C. Gamble,McElroy's Alabama Evidence § 94.05(3) (4th ed., 1991); andMaund v. State, 254 Ala. 452, 48 So.2d 553 (1950).
 VIII.
The eighth error alleged by Asam is that a member of the Disciplinary Board panel, lawyer Wade Baxley, was biased against her. Asam contends that Baxley should have been stricken as a member of the panel. We disagree.
Asam bases her allegations regarding Baxley on what she describes as Baxley's personal attack against her during the hearing. The transcript reveals no such attack. Baxley's remarks that Asam complains of were made immediately after an extended discussion of Asam's motion to postpone the hearing and to be allowed access to the documents she alleged had been wrongfully withheld:
 "MRS. ASAM: . . . . I heard the judge [Montgomery Circuit Judge Charles Price] talking to you. I was right there *Page 876 
in the room when he talked to you this morning. He thought that you might be able to grant the continuance without all these stipulations.[32]
"THE CHAIRMAN: Well —
 "MRS. ASAM: Because he just received it [her motion to delay the disciplinary hearing] just then. He didn't have time to go out and write it.
"THE CHAIRMAN: I understand that.
 "MRS. ASAM: Which I did have it written up on one procedure, which I sent to you, even though you haven't — that I know of — been served yet. I sent you a copy of the motion since the lawsuit was filed. And it's nothing against you personally about having filed a lawsuit.
 "THE CHAIRMAN: I know that. That's neither here nor there. I know Judge Price asked us if we would consider that, and we have.
 "MRS. ASAM: He asked that you talk to me before I came in here. But you people wanted —
 "THE CHAIRMAN: Well, see, I can't. I'm sorry, Mrs. Asam, but I can't do that. And Judge Price does not govern our procedure any more than we govern his.
 "MRS. ASAM: Yes, ma'am. I understand that at this time. But it is the court that I would go in next, whether it's him or not [an apparent reference to the Montgomery Circuit Court].
 "GENERAL NORRIS: Excuse me. As a point of order, that's not the court you would go in next. Appeals from this hearing go directly to the Supreme Court.
 "MRS. ASAM: Well, then I'll go to both of them then.
 "GENERAL NORRIS: The circuit court has absolutely no jurisdiction over the disciplinary proceedings.
"MRS. ASAM: Is this an administrative proceeding?
 "THE CHAIRMAN: This is a quasi-judicial proceeding.
"MRS. ASAM: I know it's administrative.
 "GENERAL NORRIS: It's neither civil nor criminal. It is a judicial proceeding.
 "MRS. ASAM: I understand that. But it is administrative.
"GENERAL NORRIS: It is judicial.
"THE CHAIRMAN: Judicial.
 "MRS. ASAM: Well, you're claiming in the federal case[33] that you are an arm of the state.
 "THE CHAIRMAN: I think this debate is a little bit —
 "PANEL MEMBER BAXLEY: Can I say something? Mrs. Asam, just for the record, I am somewhat concerned. I mean, you hold yourself out to be an attorney, and you are licensed by the Bar Association to be an attorney.
 "And it concerns me on the lack of knowledge about discovery procedures, about procedures of this Board. I think you need an attorney in the worst sort of way to represent you in this hearing, because you don't seem to know what's going on.[34]
 "Now, this Board has bent over backwards to try to accommodate you and has given you great leeway because of your lack of knowledge in a number of things that any lawyer should know, or any person should get a lawyer to advise you on.
 "I don't know what else we can do. We have bent over backwards to try and assist you in this thing and do things *Page 877 
that we don't ordinarily do for attorneys who have charges before them.
 "And, you know, we've offered you what I think is a very fair and reasonable alternative to going forward with this hearing. But it's under certain terms, and only those terms that we are willing to let this thing be put off for a period of time.
". . . .
 "MRS. ASAM: I'm just making for the record an objection to what you had to say. You said that I didn't know what the civil procedure rules and that type thing was.
 "PANEL MEMBER BAXLEY: It doesn't appear to me that you understand the discovery procedures and the Rules of Civil Procedure. And your lack of understanding is apparent here. It's not anything to do —
 "MRS. ASAM: I am making for the record that I'm objecting to you because this is showing bias already on the Disciplinary Board because of the fact it's not my fault that Mr. Norris didn't inform me or his office when I came in there to get, on June the 28th, these papers that we was supposed to be getting today. He did not inform me of the procedure that I had to come back and put it in writing and do it right away.
 "PANEL MEMBER BAXLEY: But you are an attorney. You ought to know the procedure.
 "MRS. ASAM: I'm not making an argument with you. The point is there was an intermission here with the federal case. And federal preempts state or whatever it is."
R. 1519-24.
The remarks made by Panel Member Baxley, taken in context, appear to be an expression of concern for Asam's rights as an accused and for the integrity of the entire disciplinary proceeding. The record indicates no evidence of bias on the part of Baxley. Further, while Asam did object, she did not ask for any action to be taken with regard to Baxley — she simply stated her opinion that Baxley was biased. Asam's argument on this issue, therefore, must fail.
 IX.
Asam argues that Chairman Devereaux erred in allowing a particular witness to testify; she argues that his testimony was hearsay. Specifically, when the witness testified regarding a hearing in one of the lawsuits involving Asam, Asam stated, "[A]s far as I remember, you weren't even there." Chairman Devereaux asked the witness if he had been at the hearing, and the witness said that he had been. Asam made no further hearsay objection to the witness's testimony following his assertion that he had attended the hearing in question. There is nothing for this Court to review, and there is no merit to this issue.
 X.
Asam next argues that the Alabama State Bar failed to timely prosecute Complaint One (ASB 92-254). Rule 31, Ala.R.Disc.P., provides that disciplinary proceedings "must be instituted by the filing of formal charges within six (6) years from the . . . the offense." The lawsuit that gave rise to Complaint One was filed by Asam on March 12, 1990. Formal charges against Asam based on that lawsuit were filed on Asam on June 26, 1994. There is no merit to this issue.
 XI.
Asam also claims (1) that the State Bar failed to timely produce a list of witnesses who were expected to testify against her, and (2) that the Bar failed to call certain other witnesses to testify and that this failure to call them resulted in Asam's being unable to confront them.
As to Asam's claim that the State Bar failed to timely produce a list of witnesses, the record shows that the State Bar's list of witnesses was provided to Chairman Devereaux by a facsimile transmission on February 20, 1995. The list was also mailed to Asam, although she had not requested that she be notified of the witnesses who would be called by the State Bar and although Chairman Devereaux had not ordered the parties to *Page 878 
notify each other of their prospective witnesses.
As to Asam's claim that she was denied the right to confront the witnesses against her, we first note that Asam's "list" of witnesses, served on the Chairman on February 19, 1995, stated that Asam intended to call the witnesses that the State Bar called. Because the State Bar did not call every witness on its list, Asam claims that her right to confrontation was denied. We disagree.
Asam was given the opportunity to examine each witness called by the State Bar in the disciplinary proceeding. It is the evidence given by these testifying witnesses that was considered by the Board; therefore, Asam was afforded her full right to confront each witness who actually testified. There is no requirement that the State Bar call a particular witness from a list of possible witnesses. Furthermore, Asam made no attempt to call a witness on her behalf. There is no error with regard to this issue.
 XII.
Asam claims that she had to appear before an "all male disciplinary panel" and that the makeup of the panel resulted in gender discrimination against her, and she claims that the penalties assessed against her result in age discrimination because she cannot apply for reinstatement as a lawyer until she reaches age 69.
Pursuant to Rule 4(a)(1), Ala.R.Disc.P., the five members of the Disciplinary Board are elected by the Board of Bar Commissioners. Rule 4(a)(2) gives the chairman of the Disciplinary Board the authority to appoint temporary members of the Board from the roster of Bar commissioners so as to provide a full five-member panel to hear a particular matter before the Board. The membership of the Board for the proceeding involving Asam was obtained by following the Rules of Disciplinary Procedure, and we find no evidence in the record of any gender-based discriminatory conduct toward Asam. Further, although Asam categorizes the Board as an "all male panel," the chairman of the Board was a woman.
Similarly, Asam's contention of age discrimination is not supported by the evidence. Rule 28(b), Ala.R.Disc.P., clearly provides that, following disbarment, a lawyer may not apply for reinstatement until the expiration of five years from the date of disbarment. The rule applies to all disbarments and does not discriminate against a disbarred lawyer because of the lawyer's age at the time of disbarment. Asam's allegations of gender and age discrimination are without merit.
 The Holding
The standard of review applicable to an appeal from an order of the Disciplinary Board has been stated by this Court in numerous decisions:
 "Under the present rules of disciplinary enforcement, where the members of the Disciplinary Board hear the evidence and observe the demeanor of the witnesses, the Supreme Court, on review, will presume that the Board's decision on the facts is correct; and the disciplinary order will be affirmed unless the decision on the facts is unsupported by clear and convincing evidence, or the order misapplies the law to the facts."
Norris v. Alabama State Bar, 582 So.2d 1034 (Ala. 1991) (and see the cases cited therein). Applying this standard, we hold that the decision of the Disciplinary Board of the Alabama State Bar was supported by clear and convincing evidence. Having found no error in the proceeding, we affirm the judgment of the Disciplinary Board in regard to all of the five complaints filed against Julia McCain Lampkin Asam.
During the pendency of this appeal, Asam filed a "motion to supplement the record on appeal of [ASB] 92-254 et al. because Alabama State Bar, Mr. Robert Norris should have given [certain documents] to Dr. Asam when he sent his false formal charges based on no probable cause." Without listing them, we note that all of the documents Asam says "are to be produced" fall into one of two categories: (1) documents requested at the disciplinary hearing that were provided to Asam or that were denied to her because she *Page 879 
already had them; and (2) documents requested for the first time on appeal and, therefore, not contained in the record of the disciplinary proceeding. Therefore, Asam's motion to supplement the record on appeal is denied.
This opinion was prepared by retired Justice Richard L. Jones, sitting as a Justice of this Court pursuant to §12-18-10(e), Ala. Code 1975.
APPLICATION GRANTED; MEMORANDUM WITHDRAWN; OPINION SUBSTITUTED; MOTION TO SUPPLEMENT THE RECORD ON APPEAL DENIED; AFFIRMED.
HOOPER, C.J., and MADDOX, SHORES, HOUSTON, KENNEDY, INGRAM, COOK, and BUTTS, JJ., concur.
[1] "A lawyer shall not engage in conduct that is prejudicial to the administration of justice."
[2] "It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice."
[3] "In his representation of a client, a lawyer shall not knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law."
[4] "In his representation of a client, a lawyer shall not knowingly make a false statement of law or fact."
[5] "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."
[6] "In his representation of a client, a lawyer shall not file a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of the lawyer's client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another."
[7] "A lawyer shall not knowingly make a false statement of material fact or law to a tribunal."
[8] "A lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law."
[9] "It is professional misconduct for a lawyer to engage in any other conduct that adversely reflects on his fitness to practice law."
[10] See footnote 2.
[11] See footnote 5.
[12] See footnote 6.
[13] See footnote 7.
[14] See footnote 9.
[15] The secretary's part in the alleged conspiracy was typing and mailing Mr. Vreeland's "open letter."
[16] See footnote 2.
[17] See footnote 5.
[18] See footnote 6.
[19] See footnote 7.
[20] See footnote 9.
[21] See footnote 2.
[22] See footnote 5.
[23] See footnote 6.
[24] See footnote 7.
[25] See footnote 9.
[26] One complaint named three physicians as defendants; the other complaint named as defendants "The University of Alabama Birmingham Medical Center; The University of Alabama Hospitals; Dr. Charles McCallum and Dr. L. Clark Taylor, Jr., Administrators, University of Alabama Hospitals."
[27] In the notice of appeal from the judgment for University of Alabama Hospitals, Mrs. Asam stated that the plaintiff was appealing only the judgment for "UAB Hospitals." However, Mrs. Asam's brief on behalf of the plaintiffs argued against the judgment for the other defendants in the case, not against the judgment for University of Alabama Hospitals. In affirming, this Court noted: "We will not address arguments concerning a judgment not appealed from; furthermore, 'when the appellant fails to invite the appellate court's review of any issues raised from the court below, the trial court's judgment is due to be affirmed.' " 591 So.2d at 451.
[28] See footnote 2.
[29] See footnote 5.
[30] See footnote 6.
[31] See footnote 9.
[32] Asam had attempted to have Judge Price order a delay in her disciplinary hearing.
[33] Asam had filed an action in a federal district court against the Alabama State Bar, its general counsel, its executive secretary, its president and president-elect, several lawyers, and a circuit judge, alleging a variety of violations of her constitutional rights.
[34] The record reflects that this concern was shared by Chairman Devereaux who, during the discussion of Asam's motion for a continuance and the Board's offer of the option that Asam accept "disabled inactive status," stated: "We also want to advise you that you are entitled to have an attorney represent you in this proceeding as a disabled inactive status attorney. And, if you cannot afford one or do not have one, we can have one appointed to represent you in that regard."