THOMPSON, Presiding Judge.
Austin Conner, a licensed pharmacist, appeals from a Montgomery Circuit Court judgment denying his petition seeking review of a decision of the Alabama State Board of Pharmacy (“the Board”).
After a December 16, 2009, hearing in the underlying administrative action, the Board determined that Conner had testified falsely in a previous disciplinary hearing, which had been held in August 2009. On December 30, 2009, the Board entered a decision ordering that Conner be placed on probation for five years and ordering him to pay a $5,000 fine. Conner timely filed a petition for review of the Board’s decision in the circuit court. The only issue Conner raised before the circuit court was whether the Board had properly served him with notice of the December 16, 2009, hearing. After a hearing on the petition, the circuit court entered a final judgment on February 22, 2011, denying Conner’s petition and dismissing the case with prejudice. Conner timely appealed the circuit court’s judgment to this court.
The only issue Conner raises on appeal is whether the Board’s December 30, 2009, decision is void on the ground that Conner did not receive timely notice of the charges against him or of the December 16, 2009, hearing, as required by § 34-23-34, Ala. Code 1975. The record contains the following relevant facts.
On October 22, 2009, Herb Bobo, the Board’s executive director, sent a Statement of Charges and Notice of Hearing (“the notice”) to Conner. In the notice, the Board charged that Conner had violated § 34-23-33, Ala.Code 1975, which sets forth the bases upon which a pharmacist’s license may be revoked or suspended. Specifically, the notice stated that Conner had made false statements to the Board during an August 2009 hearing regarding allegations that he had engaged in sexually inappropriate conduct with people under his supervision.[1] The notice also stated *961 that a hearing on the allegation was scheduled for December 16, 2009, at 1 p.m. at the Board’s office in Birmingham.
The notice was sent by certified mail to Conner’s home address in Florida — the same address where he received papers relating to the previous hearing and the same address Conner had provided to the Board. Records of the United States Postal Service (“USPS”) indicate that Conner was notified at his residence on October 28, October 31, and November 12, 2009, that he had a certified letter awaiting him at the post office.
At the December 16 hearing, Conner initially testified that he did not receive the certified-mail notices from the USPS. He then testified that his children or his wife might have received the notices but that he did not. After providing evasive testimony regarding whether he received mail at his home address, Conner made the following statement: “I never got the paperwork [the certified-mail notices]. When I got the paperwork, it was too late for me to get there. The paperwork — my wife get a lot of paperwork when my kids come home. I get home late at night. And I didn’t get the paperwork to get done to the pick — when I got a paperwork— when I got the letter — ” Conner then went back to his original assertion that he had not received “any notice.” After being reminded that he was under oath, Conner testified that he had found a certified-mail notice “piled up on [his] desk” the Friday before the December 16 hearing. He said he went to the post office to claim his letter the next day, Saturday, but, he said, the post office was closed. He claimed that he had not seen the statement of charges against him until the day of the hearing.
Board records indicate that on December 8, 2009, the certified letter it had sent to Conner’s home address was returned. On December 9, 2009, the Board’s attorney forwarded the notice to the attorney who had represented Conner at the August 2009 hearing, who, in turn, forwarded the notice to Conner via electronic mail (“email”). At the December 16, 2009, hearing, Conner claimed that he had not received that e-mail.
On December 11, 2009, Conner’s attorney moved to continue the December 16, 2009, hearing on the ground that Conner had not been properly served with notice of the hearing or of the charges against him. The Board responded, setting forth the facts surrounding its attempt to serve Conner by certified mail. The hearing officer denied the motion to continue, and the hearing went forward as scheduled on December 16, 2009. Conner was present at the hearing, but without counsel present. As mentioned, at the conclusion of the hearing, Conner was found guilty of making false statements during the August 2009 hearing.
Conner appealed the Board’s decision to the circuit court, which upheld the Board’s decision. He then appealed to this court.
“ ‘ “Judicial review of an agency’s administrative decision is limited to determining whether the decision is supported by substantial evidence, whether the agency’s actions were reasonable, and whether its actions were within its statutory and constitutional powers. Judicial review is also limited by the presumption of correctness which attaches to a decision by an administrative agency.” ’ ”
Ex parte Medical Licensure Comm’n of Alabama, 897 So.2d 1093, 1097 (Ala.2004) (quoting Ex parte Alabama Bd. of Nurs *962 ing, 835 So.2d 1010, 1012 (Ala.2001), quoting in turn Alabama Medicaid Agency v. Peoples, 549 So.2d 504, 506 (Ala.Civ.App.1989)); see also § 41-22-20(k), Ala.Code 1975. Review of the hearing officer’s conclusions of law or application of law to the facts is de novo. Medical Licensure Comm’n of Alabama v. Herrera, 918 So.2d 918, 926 (Ala.Civ.App.2005); State Dep’t of Human Res. v. Funk, 651 So.2d 12, 16 (Ala.Civ.App.1994). Furthermore, this court reviews a circuit court’s judgment as to an agency’s administrative decision without a presumption of correctness because the circuit court is in no better position to review the agency’s decision than is this court. Clark v. Fancher, 662 So.2d 258, 261 (Ala.Civ.App.1994).
Conner relies on § 41-22-12(a), Ala. Code 1975, a provision of the Alabama Administrative Procedure Act (“the AAPA”), § 41-22-1 et seq., Ala.Code 1975, and § 34-23-34, Ala.Code 1975, which governs the notice required to revoke or suspend the license of a pharmacist, to support his contention that the Board did not timely serve him with notice of the charges against him and of the hearing date.
Section 41-22-12(a) provides:
“In a contested case, all parties shall be afforded an opportunity for hearing after reasonable notice in writing delivered either by personal service as in civil actions or by certified mail, return receipt requested. However, an agency may provide by rule for the delivery of such notice by other means, including, where permitted by existing statute, delivery by first class mail, postage prepaid, to be effective upon the deposit of the notice in the mail. Delivery of the notice referred to in this subsection shall constitute commencement of the contested case proceeding.”
Section 34-23-34 provides:
“No action to revoke or suspend the license of any pharmacist or the permit to operate any pharmacy in this state shall be taken until the licensee or holder of such permit has been furnished a statement in writing of the charges against him or her together with a notice of the time and place of hearing. The statement of charges and notice shall be served upon such a person at least 30 days before the date fixed for the hearing, either personally or by registered or certified mail sent to his or her last known post-office address. The burden of proof shall be on the board.”
Conner points out that, pursuant to the Alabama Rules of Civil Procedure, service by certified mail, the method of service the Board attempted in this case, is deemed complete “from the date of delivery to the named addressee or the addressee’s agent as evidenced by signature on the return receipt.” Rule 4(i)(2)(C), Ala. R. Civ. P. He notes that the return receipt in this case was never signed; thus, he says, there was no valid service in this case. Additionally, Conner argues that he did not have at least 30 days’ notice of the hearing or of the charges against him; therefore, he says, the Board failed to comply with the requirements of § 34-23-34. Because he was not served with the notice, Conner says, the Board’s decision of December 30, 2009, must be overturned and the circuit court erred in its refusal to do so.
In response, the Board argues that to set aside the Board’s decision on the ground asserted by Conner would be to allow Conner to benefit from avoiding service. When considering service in general, Alabama appellate courts have recognized that “the return of certified mail ‘unclaimed’ does not in and of itself constitute avoidance of service of process so as to justify service of process by ordinary mail or by publication.” Wise v. Siegel, 527 *963 So.2d 1281, 1281 (Ala.1988). However, neither the AAPA nor § 34-28-34 allow for service by ordinary mail or by publication. Indeed, both provisions require service by certified mail or personal service.
The most closely analogous Alabama case our research has revealed is Asam v. Alabama State Bar, 675 So.2d 866 (Ala.1996) (superseded by rule on other grounds, Rule 5.1.(d), Ala. R. Disc. P.), in which our supreme court held that, despite Asam’s contention that she had been denied due process because she had not been properly served with notice of the disciplinary proceedings against her, the evidence indicated that Asam had, in fact, been provided with sufficient notice of the disciplinary proceedings against her. The court noted that the Alabama State Bar had mailed notice of the disciplinary hearing to Asam’s home and to her office both by regular first-class mail and by certified mail. Even though the certified-mail receipts for the notices of the hearing were returned to the Bar indicating that the notices had been unclaimed, the supreme court determined that Asam had sufficient notice of the disciplinary hearing against her, noting that “[t]he record makes it clear that, despite her assertions to the contrary, Asam had sufficient notice of the disciplinary hearing involving the complaints against her, and the record makes it clear that her conduct showed a pattern of avoiding service of process.” Asam, 675 So.2d at 872. We note that in Asam the Tuscaloosa County Sheriffs Department had previously served Asam with the summons and complaint in the action.
In support of its contention, the Board cites Marcus v. Ambach, 136 A.D.2d 778, 523 N.Y.S.2d 241 (1988), the facts of which are more closely on point with those in the instant case. Marcus was a podiatrist who challenged the revocation of his license to practice podiatry after he was found guilty of professional misconduct. Among the grounds for Marcus’s appeal was his contention that he had been denied due process because, he said, he had not been notified of the date for his hearing. Id., 136 A.D.2d at 779, 523 N.Y.S.2d at 242.
According to the opinion, Marcus had been served with a statement of the charges against him and a notice of the hearing date. 136 A.D.2d at 778, 523 N.Y.S.2d at 241. At Marcus’s request, the hearing was continued. Notice of the rescheduled hearing was sent by certified mail to Marcus’s attorney of record and to Marcus at the address he had provided. The USPS attempted to deliver the certified letter on 3 occasions over 15 days, but the letter was eventually returned as “unclaimed” to the review committee hearing his case. Id., 136 A.D.2d at 778-79, 523 N.Y.S.2d at 241 — 42. Marcus did not appear at the hearing, and he was not represented by counsel. The review committee held the hearing as scheduled despite Marcus’s absence and recommended revocation of his podiatrist license. The relevant authority accepted the recommendation. Id., 136 A.D.2d at 779, 523 N.Y.S.2d at 242.
In response to Marcus’s assertion that he had been denied due process, the New York appellate court explained that due process requires “ ‘ “notice reasonably calculated, under all the circumstances, to apprise [one] of the pendency of the action and ... an opportunity to present [one’s] objections” ’ (Silverstein v. Minkin, 49 N.Y.2d 260, 263[, 425 N.Y.S.2d 88, 401 N.E.2d 210 (1980) ], quoting Mullane v. Central Hanover [Bank &] Trust Co., 339 U.S. 306, 314[, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) ]).” Marcus, 136 A.D.2d at 779, 523 N.Y.S.2d at 242.
The New York court stated that Marcus’s attorney of record had been notified of the hearing, noting that even though Marcus claimed to have “fired” that attor *964 ney, he had failed to notify the review committee of that development. The court went on to state that
“notice was sent to [Marcus] at his registered address, which he must keep current pursuant to Education Law § 6502(5) and 8 NYCRR 59.8(c) and (f), particularly when charges of misconduct are pending (see, Matter of Stern v. Ambach, 128 A.D.2d 232, 235-236, 516 N.Y.S.2d 319 [(1987)]). Significantly, [Marcus] verified that he still resided at that address when he commenced this CPLR article 78 proceeding. Thus, it was [Marcus’s] inaction in claiming his mail, not respondent’s conduct, which denied, him the heañng notice he claims was lacking.”
Marcus, 136 A.D.2d at 779, 523 N.Y.S.2d at 242 (emphasis added).
We agree with the rationale expressed by the appellate courts in Asam and in Marcus. In this case, Conner was warned during the August 2009 hearing that if an investigation led to evidence indicating that he was making false statements during that hearing, more charges would be levied against him. Within two months of that warning, the Board sent the statement of charges involving the false statements and the notice of hearing to Conner’s address. Essentially, the present action is a continuation of the August 2009 action, and Conner was aware that additional charges arising from his conduct in that action would possibly be forthcoming. Each of the USPS notifications to Conner that he had received a letter via certified mail was delivered more than 30 days before the December 16, 2009, hearing. Conner acknowledged that the notice was mailed to the proper address. During his testimony at the December 16 hearing, Conner gave several conflicting versions regarding whether the USPS notices regarding the certified letter had reached him or his residence. His testimony ranged from a denial that he had ever received such a notice to an acknowledgment that he had such a notice on his desk but that he had failed to discover it on time. Without a doubt, as was the case in Marcus, it was Conner’s own conduct in failing to retrieve the certified letter, not the conduct of the Board, that led to the supposed “lack” of due process of which he now complains.
Pharmacy is a profession whose members deal with the safety and general welfare of the public. Licensed pharmacists cannot be allowed to frustrate the Board’s policing powers, and endanger the health and welfare of the public, simply by refusing to retrieve a certified letter. Under the facts of this case, we conclude that the Board carried out its obligation to notify Conner of the statement of charges against him and the date, time, and place of the hearing scheduled to consider those charges. The evidence supports a finding that it was Conner’s conduct, and not the Board’s, that supposedly “deprived” him of due process in this case.
Accordingly, the judgment of the trial court upholding the Board’s decision is affirmed.
AFFIRMED.
PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.

. The record in this case indicates that, at the August 2009 hearing, the Board's president warned Conner that certain of his statements would be investigated and, if it was discovered that he was not being truthful, other charges would be levied. Conner was found guilty of inappropriate conduct as charged. *961 As a result, Conner was placed on probation for two years and was ordered to pay a fine.